This is on appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder in dismissing the bill. *Page 262 
The bill of complaint charges that the defendant James J. Ferris, Jr., held in trust for his brother, John A. Ferris, ninety-two shares of the capital stock of the defendant Stillman-Delehanty-Ferris Company and that he fraudulently appropriated the same to his own use. It appears that under date of September 9th, 1927, ninety-two shares of stock in the defendant company were transferred to John A. Ferris from the estate of Bridget Ferris, his deceased mother. That in 1928 or early in 1929 John A. Ferris endorsed this certificate of stock and delivered it to defendant James J. Ferris, Jr. It further appears that at various times before and after the stock was so endorsed that James had loaned money to John and held his promissory notes therefor. On January 23d 1934, the certificate for this stock was transferred on the books of the company from John to James. On May 23d 1934, John died intestate and on November 26th, 1934, Alice Harris Ferris, widow of John, was duly appointed administratrix of his estate.
The sole issue in the case was one of fact, whether or not James fraudulently appropriated this stock to his own use.
The vice-chancellor in reviewing the testimony concluded that its weight was in favor of the defendants and that the complainant had failed to sustain the burden of proving her cause of action. An examination of the testimony leads us to the same conclusion.
We find no evidence of fraud on the part of James. This stock was doubtless delivered to him for safekeeping by John and also as security for loans made to him by James. The stock depreciated very much in value from that time until it was transferred to James. At that time it seems clear that the indebtedness of John to James was in excess of the then value of the stock and that it was agreed by John that the stock be transferred to James.
Several letters written by James to the complainant in 1929 and after the death of John were introduced in evidence. They were friendly and frank, and told in detail of the stock transaction and generally of the relationship between *Page 263 
the brothers. The contents of these letters negative any fraud or unworthy motives on the part of James. Reliance is made by the complainant on the letter from James to her dated February 16th, 1929, in which he advises her of the reasons why the stock was transferred to him. It is urged that this is strong evidence of a trust relationship and that it cannot be altered or varied by parol testimony. This letter does not create a trust, but is merely evidence of a trust. Moreover, it is not clear and explicit as to what the trust or agreement was between the brothers. It indicates that the stock was endorsed and delivered to James by John for two purposes: (1) To prevent John from disposing of it due to his improvidence, and (2) by clear inference, as security for his indebtedness to James.
The testimony which was admitted over objection seems to us to have been for the purpose of explaining the transaction and not in any way to alter or contradict any written agreement between the parties. It was properly admitted.
Finding no error in the proceedings, the decree dismissing the bill is affirmed.
For affirmance — TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 14.
For reversal — None. *Page 264